Filed 6/20/13  In re B.R. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re B.R. et al., Persons Coming Under the Juvenile Court Law. | |
| N.R. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br> Respondent; <br><br> CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br> Real Party in Interest. | A138510 <br><br> (Contra Costa County Super. Ct. No. J11-01702 & J11-01703) |

## I.

## INTRODUCTION

In this child dependency proceeding regarding two children, B.R., born in 2008, and M.R., born in 2011, the superior court terminated reunification services and set a hearing for July 9, 2013, to determine a permanent plan for the minors.  (Welf. & Inst. Code, § 366.26.)[1]  K.C. (hereafter Mother) and N.R. (hereafter Father) have filed separate petitions for extraordinary writ.  They each argue that they substantially complied with their reunification plans, and that the court erred in failing to extend reunification services

_____

[1] All future statutory references are to the Welfare and Institutions Code.

1

beyond the 12-month review hearing so that they could successfully reunify with their children.  As substantial evidence supports the juvenile court's findings and orders, we deny the petitions.

**II.**

**FACTS AND PROCEDURAL HISTORY**

This family has been involved with the Contra Costa County Bureau of Children and Family Services (the Bureau) since shortly after M.R.'s birth in November 2011. The family came to the Bureau's attention because of Mother's chronic and serious alcohol dependence, multiple domestic violence altercations, and Father's inability to protect his children when their mother was intoxicated.

Originally, the children were removed from Mother's custody alone, and the court sustained a petition declaring them dependent children under section 300, subdivision (b), based on findings of drug abuse and domestic violence.  Father and children moved in with the children's paternal great-grandmother.  However, in violation of a court order, Father allowed Mother to care for M.R. while he went to work.  Mother became intoxicated to the point of needing emergency medical attention while two-month-old M.R. was in her care.  Mother's blood-alcohol level tested at .36 percent.  By agreement, an allegation was then sustained against Father based on failure to protect.  The children were placed with paternal relatives, where they have remained throughout these proceedings.

Reunification services were extended to both parents at the 6-month review hearing despite very minimum progress on the referrals that were offered to both parents since November 2011.  Mother was referred to an inpatient substance abuse treatment program.  After initial hesitation, Mother went to a program in February 2, 2012.  She was discharged from the program because she tested positive for alcohol after a weekend pass.  Mother then lived with Father for approximately six weeks before entering into another program.  She completed the 90-day program and requested a 30-day extension. On September 26, 2012, she was discharged from the program because she tested positive for alcohol.  The next day, she was arrested for stealing from Walmart.  She went

2

to jail for 30 days. When she was released, she went back to living with Father. She admitted that she drank alcohol almost every day.

As for Father, after jurisdiction was taken, he was referred to individual counseling, drug testing and parenting education by the Bureau's social worker. He started counseling on August 21, 2012. However, he showed very little insight into his role in the removal of his children, and little commitment to his case plan. He also continued to provide support to Mother even when she was abusing alcohol.

In the report prepared for the 12-month review hearing the social worker recommended that reunification services be terminated, and that a hearing be set to determine a permanent plan for the children. It was noted that both parents were attentive and caring during their supervised visits with their children. However, neither parent had shown a commitment to fulfilling the requirements of their case plans, nor had they been able to address the issues that brought this family to the Bureau's attention. The social worker concluded that it would be detrimental to send the children home to either one of their parents when "the problem of substance abuse still exi[sts] with one parent and [the] other parent continues to ignore the issue." The report concludes with the following assessment: "Considering the seriousness of [Mother's] alcohol abuse and [Father's] inability to engage in services and in making safe decisions around [Mother's] drinking, the Bureau does not believe it would be safe to return [the children] to [their parents'] care."

The contested 12-month review hearing took place on six separate dates, beginning on January 31, and concluding on April 15, 2013. Mother testified concerning her completion of classes in domestic violence, parent education, and anger management, her participation in residential drug treatment and individual therapy, and her commitment to "live independently in a healthful manner, substance free." Mother also testified she had severed her relationship with Father, which she described as being physically and emotionally unhealthy for her. She was living in a domestic violence shelter but was looking for a job and an apartment where her children could reside with her in an environment free of domestic violence.

3

Father testified that he had been living with his grandmother for the last four months. He had seen an individual therapist "[a]t least 15 times," but he terminated the sessions because he believed "that there [was] not much more to talk to him about . . . ."[2] He sporadically attended Al-Anon and Alcoholics Anonymous meetings. Even though Father was supposed to attend parenting classes, he "just didn't look for one." Although he acknowledged there was ongoing domestic violence in his relationship with Mother, he did not seek help with domestic violence issues. He testified that he recently made the determination that he was no longer going to be in a relationship with Mother. His "[m]ain priority is the kids."

The social worker testified that the parents had failed to make any significant progress on their reunification plans, and she could see no substantial probability the children could be returned to either of them within the remaining few months of the maximum 18-month reunification period.[3] Despite their claims to the contrary, the social worker believed the parents remained in a relationship, continued to see one another, and that Mother continued to abuse alcohol. The social worker testified that Father had admitted to her he and Mother had recently gone to a local casino together, and Mother had recently posted photos on Facebook of them together. Also, the social worker was "certain" that she smelled alcohol on Mother's breath after a court proceeding on March 21. The social worker expressed concern about the parents' continuing association because of ongoing problems with domestic violence and Father's pattern of being unable to set boundaries with Mother while facilitating her alcohol abuse.

At the conclusion of the hearing, the court indicated that it did not find Mother and Father to be credible witnesses. The court also noted that they had demonstrated no insight into their deficiencies as parents. As for Mother, the court characterized her as "a

[2] The social worker testified that Father attended eight individual therapy sessions.

[3] At the 12-month hearing, the court may continue the case for up to six months while the parent receives additional services, provided that the hearing occurs within 18 months after the child was originally taken from the physical custody of the parent. (§ 366.21, subd. (g)(1).)

4

mean drunk" and found she is "just totally dishonest about her [substance abuse] problem. She's tried many times, been kicked out of programs, has not been honest with the court . . . ." As for Father, the court indicated "he does care about his children, but I think he cannot protect them." Addressing the parents, the court emphasized, "[y]ou don't know how to stay away from each other."

The juvenile court adopted the findings and recommendations of the Bureau, concluding there was not a substantial probability that the children could be returned to either parent's custody within the remaining month and a half, even if the court extended reunification services to the 18-month statutory maximum. The court also found that returning the children to either of their parents would be detrimental to their well-being. Reunification services were terminated, and a permanency planning hearing was scheduled for July 9, 2013, pursuant to section 366.26.

## III.

## DISCUSSION

In her petition, Mother contends there was no factual basis to support the court's finding that return of the children to her would be detrimental to their well-being. She indicates that "within the last six-month reporting period" she had "successfully completed a residential substance abuse program, as well as subsequently enrolling and participating in an outpatient substance abuse program . . . ." She argues that while she may not be an ideal parent, she gets "passing grades," which she believes is enough to support return of her children. She also claims there is a substantial probability the children could be returned to her custody if she were given more time to reunify.

In the same vein, in Father's petition he argues that he "did so much work towards reunification and made substantial progress and all that progress could not be set aside simply because Father did not meet the perfection the Court was looking for." Father argues further that he "is satisfactorily progressing with his case plan, he has a [*sic*] full time employment, and he can provide his children a stable home." Consequently, he questions the evidentiary support for the juvenile court's finding that there is not a

5

substantial probability the children could be returned and safely maintained in his custody.

"In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. . . . Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact. [Citation.]" (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547; accord, *In re David H.* (2008) 165 Cal.App.4th 1626, 1633.)

By the time of the 12-month hearing, Mother had participated in three substance abuse programs in the last two years. She was discharged from two of them for relapsing and drinking again. She left one of the programs just a few days before graduating, then got arrested, and spent time in jail. Despite Father's participation in individual counseling, he continued to exercise poor judgment by allowing Mother to live with him after she was discharged from the treatment program, and again after she was released from jail, while she continued to abuse alcohol.

In an addendum to the report prepared for the 12-month review hearing the social worker wrote: "It is clear that both parents fail to see the impact of substance abuse on the lives of their children. They appear not [to] have insight into [Father's] codependency and how it has been negatively impacting [Mother's] dependence on substance abuse. [Father] has shown time and time again his poor coping behaviors by wanting to rescue and support [Mother] even after her unsuccessful treatment program outcomes and several relapses."

Based on all this evidence, the juvenile court could properly determine that neither parent had made significant progress in resolving the problems that led to the children's removal from their care; and therefore, the children could not safely be returned to either

6

parent's custody.[4]  Furthermore, the court was justified in finding that neither parent had demonstrated the capacity and ability to complete the objectives of their case plans within the remaining month and a half left before the maximum reunification period expired. Therefore, the court could reasonably conclude there was no substantial probability that either parent could safely reunify with the children if additional services were ordered.  In short, the court's findings, which are challenged in these writ petitions, were fully supported by the evidence.

## IV.
## DISPOSITION

The petitions are denied on their merits.  (§ 366.26, subd. (*l*)(1)(A).)  Our decision is immediately final as to this court.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)


_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
HUMES, J.


_____
[4] The court's finding that parents failed to participate or make substantive progress in court-ordered treatment programs constituted "prima facie evidence that return would be detrimental."  (§ 366.21, subd. (e), par. 1).

7